IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| JEFF LAVALLIERE<br>6052 North 62nd Street<br>Philadelphia, PA   19120<br>             Mr. Lavalliere,<br> <br> <br>v.<br> <br> <br>CITY AND COUNTY OF PHILADELPHIA<br>c/o City of Philadelphia Law Department<br>One Parkway, 15th Floor<br>1515 Arch Street<br>Philadelphia, PA 19102;<br> <br>CITY OF PHILADELPHIA POLICE DEPARTMENT<br>8th and Race Streets<br>Philadelphia, PA 19106;<br> <br>CHARLES H. RAMSEY, Individually and in His<br>Official Capacity as Police Commissioner<br>8th and Race Streets<br>Philadelphia, PA 19106;<br> <br>STEPHEN T. JOHNSON, Individually and in His<br>Official Capacity as Deputy Police Commissioner<br>8th and Race Streets<br>Philadelphia, PA 19106;<br> <br>LISA KING, Individually and in Her<br>Official Capacity as Commanding Officer<br>Gun Permits Unit<br>8th and Race Streets<br>Philadelphia, PA 19106;<br> <br>DETECTIVE VINCENT GUARNA<br>Individually and in His Official Capacity<br>as Philadelphia Police Detective<br>c/o City of Philadelphia Law Department<br>1515 Arch Street, 14th Floor<br>Philadelphia, PA  19102 | )<br>)<br>)<br>)<br>)<br>)<br>) Docket No. 12-CV-_____<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

|                                                      |     |
|------------------------------------------------------|-----|
|                                                      | )   |
| POLICE OFFICER VELEZ, BADGE # 3109                   | )   |
| Individually and in His Official Capacity            | )   |
| as Philadelphia Police Officer                       | )   |
| c/o City of Philadelphia Law Department              | )   |
| 1515 Arch Street, 14th Floor                         | )   |
| Philadelphia, PA  19102                              | )   |
|                                                      | )   |
| POLICE OFFICER CARTAGENA, BADGE # 4206               | )   |
| Individually and in His Official Capacity            | )   |
| as Philadelphia Police Officer                       | )   |
| c/o City of Philadelphia Law Department              | )   |
| 1515 Arch Street, 14th Floor                         | )   |
| Philadelphia, PA  19102                              | )   |
|                                                      | )   |
| POLICE OFFICER JOHNSON, BADGE # 1529                 | )   |
| Individually and in His Official Capacity            | )   |
| as Philadelphia Police Officer                       | )   |
| c/o City of Philadelphia Law Department              | )   |
| 1515 Arch Street, 14th Floor                         | )   |
| Philadelphia, PA  19102                              | )   |
|                                                      | )   |
| POLICE OFFICER MONAHAN, BADGE # 1898                 | )   |
| Individually and in His Official Capacity            | )   |
| as Philadelphia Police Officer                       | )   |
| c/o City of Philadelphia Law Department              | )   |
| 1515 Arch Street, 14th Floor                         | )   |
| Philadelphia, PA  19102; and                         | )   |
|                                                      | )   |
| POLICE OFFICER RIVERA, BADGE # 1670                  | )   |
| Individually and in His Official Capacity            | )   |
| as Philadelphia Police Officer                       | )   |
| c/o City of Philadelphia Law Department              | )   |
| 1515 Arch Street, 14th Floor                         | )   |
| Philadelphia, PA  19102                              | )   |
| Defendants.                                          | )   |

## CIVIL ACTION COMPLAINT

This is a civil rights action in which named Plaintiff, Jeff Lavalliere, seeks relief in the form of declaratory and injunctive relief, as well as damages and punitive damages for injuries and the violation of his rights, privileges, and immunities secured by the Civil Rights Act of 1871 (42 U.S.C. § 1983), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000(d), *et seq.*),

42 U.S.C. §§1981, 1982, 1985 and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other Constitutional Provisions and Federal Statutes, and the Laws and Constitution of the Commonwealth of Pennsylvania.

## I. JURISDICTION

1. This action is brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§1981, 1982, 1983, 1985 and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other Constitutional Provisions and Federal Statutes, and pursuant to 28 U.S.C. §§ 1331, 1332 and 1343 *et seq*.

2. Jurisdiction is established over State law claims based on supplemental jurisdiction under 28 U.S.C. § 1367.

3. Declaratory and Injunctive Relief is authorized by 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

4. The amount in controversy exclusive of interest and costs exceeds One-Hundred-and-Fifty-Thousand ($150,000.00) Dollars.

## II. VENUE

5. All claims herein arose within the jurisdiction of the United States District Court of the Eastern District of Pennsylvania, and involve Defendants whose residence or principle place of business is within this court's jurisdictional boundaries. Therefore, venue is appropriately invoked pursuant to 28 U.S.C. § 1391(b) and (c).

## III. PARTIES

6. Plaintiff, Jeff Lavalliere ("Mr. Lavalliere"), is a 32-year-old African-American, adult male, and a United States Citizen whose domicile is within the city and county of Philadelphia, Pennsylvania.

7.  Defendant, City and County of Philadelphia ("Defendant City of Philadelphia") is a munic-
    ipality organized by and through the Commonwealth of Pennsylvania that directs, manages
    and controls the City of Philadelphia Police Department ("Defendant City of Philadelphia
    Police Department"), and employs all the individually-named Defendants.

8.  Defendant, City of Philadelphia Police Department ("Defendant City of Philadelphia Police
    Department") is a department of Defendant City of Philadelphia that is the recipient of Ti-
    tle VI Funds and is liable under Title VI for the discriminatory actions of its employees.
    Defendant City of Philadelphia Police Department is being sued solely under Title VI of
    the Civil Rights Act of 1964.

9.  Defendant, Charles H. Ramsey ("Defendant Ramsey") is the City of Philadelphia Police
    Commissioner employed by and an agent of the City of Philadelphia.  At all times relevant
    hereto, Defendant Ramsey was acting under the color of State law as the Police Commis-
    sioner for the City of Philadelphia and the final decision-maker regarding the operation of
    Defendant City of Philadelphia Police Department.  Defendant Ramsey is responsible for
    establishing, maintaining and enforcing the customs, practices and policies of Defendant
    City of Philadelphia Police Department.  He is also responsible for hiring, screening, train-
    ing, supervision, monitoring, auditing, discipline and control of police officers under his
    command, including the individually-named Defendant police officers in this case.  De-
    fendant Ramsey is being sued in his individual and official capacities.

10. Defendant, Stephen T. Johnson ("Defendant Deputy Commissioner Johnson"), is a City of
    Philadelphia Police Commissioner employed by and an agent of the City of Philadelphia.
    At all times relevant hereto, Defendant Deputy Commissioner Johnson was acting under
    the color of State law as the Police Commissioner for the City of Philadelphia and a deci-

sion-maker regarding the operation of Defendant City of Philadelphia Police Department. Defendant Deputy Commissioner Johnson is responsible for establishing, maintaining and enforcing the customs, practices and policies of Defendant City of Philadelphia Police Department. He is also responsible for hiring, screening, training, supervision, monitoring, auditing, discipline and control of police officers under his command, including the individually- named Defendant police officers in this case. Defendant Johnson is being sued in his individual and official capacities.

11. Defendant, Lisa King ("Defendant King"), at all times relevant hereto was a Commanding Officer within Defendant City of Philadelphia Police Department Gun Permit Unit. Defendant King is being sued in her individual and official capacities. Further, at all times relevant hereto Defendant King was acting under the color of state law in her capacity as a Commanding Officer within Defendant City of Philadelphia Police Department Gun Permit Unit.

12. Defendant, Detective Vincent Guarna ("Defendant Guarna"), at all times relevant hereto was a Detective within Defendant City of Philadelphia Police Department. Defendant Guarna is being sued in his individual and official capacities. Further, at all times relevant hereto Defendant Guarna was acting under the color of state law in his capacity as a Detective within Defendant City of Philadelphia Police Department.

13. Defendant, Police Officer Velez, Badge # 3109 ("Defendant Velez"), at all times relevant hereto was a Police Officer within Defendant City of Philadelphia Police Department. Defendant Velez is being sued in his individual and official capacities. Further, at all times relevant hereto Defendant Velez was acting under the color of state law in his capacity as a Police Officer within Defendant City of Philadelphia Police Department.

14. Defendant, Police Officer Catagena, Badge # 4206 ("Defendant Cartagena"), at all times relevant hereto was a Police Officer within Defendant City of Philadelphia Police Department.  Defendant Catagena is being sued in his individual and official capacities.  Further, at all times relevant hereto Defendant Catagena was acting under the color of state law in his capacity as a Police Officer within Defendant City of Philadelphia Police Department.

15. Defendant, Police Officer Johnson, Badge # 4206 ("Defendant Cartagena"), at all times relevant hereto was a Police Officer within Defendant City of Philadelphia Police Department.  Defendant Johnson is being sued in his individual and official capacities.  Further, at all times relevant hereto Defendant Johnson was acting under the color of state law in his capacity as a Police Officer within Defendant City of Philadelphia Police Department.

16. Defendant, Police Officer Monahan, Badge # 1898 ("Defendant Monahan"), at all times relevant hereto was a Police Officer within Defendant City of Philadelphia Police Department.  Defendant Monahan is being sued in his individual and official capacities.  Further, at all times relevant hereto Defendant Monahan was acting under the color of state law in his capacity as a Police Officer within Defendant City of Philadelphia Police Department.

17. Defendant, Police Officer Rivera, Badge # 1670 ("Defendant Rivera"), at all times relevant hereto was a Police Officer within Defendant City of Philadelphia Police Department.  Defendant Rivera is being sued in his individual and official capacities.  Further, at all times relevant hereto Defendant Rivera was acting under the color of state law in his capacity as a Police Officer within Defendant City of Philadelphia Police Department.

## IV. FACTUAL ALLEGATIONS

18. The Second Amendment to the United States Constitution guarantees citizens such as Mr. Lavalliere the right to own and carry firearms.

6

19. In 1995, the Pennsylvania General Assembly gave the Pennsylvania Attorney General the authority to enter into formal reciprocity agreements with other states under Section 6109(k) of the Uniform Firearms Act.

20. On September 21, 2001, Pennsylvania began its recognition of firearms licenses issued in Florida.

21. On November 29, 2010, Mr. Lavalliere was re-issued a license to carry a Concealed Weapon Or Firearm License by the State of Florida.

22. Afterwards, Mr. Lavalliere began to lawfully carry his firearm.

23. On March 26, 2009, Mr. Lavalliere was certified as a Certified Agent pursuant to Lethal Weapons Training Act of 1974, P.L. 705, No. 235, otherwise known as "Act 235" the Commonwealth of Pennsylvania.

24. Mr. Lavalliere carries his firearm for work as a security agent pursuant to Lethal Weapons Training Act of 1974, P.L. 705, No. 235, otherwise known as "Act 235."

25. Despite that fact that: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth" Defendant City of Philadelphia has a long and unsuccessful history of attempting to regulate lawful gun ownership.

26. The Pennsylvania Supreme Court has shot down at least three recent attempts by Defendant City of Philadelphia to "regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components."

27. Since Defendant City of Philadelphia's Mayor, Michael Nutter, began his term he has been a malicious and vocal advocate of abolishing the Second Amendment rights of citizens like

Mr. Lavalliere.  Highly prone to rhetorical hyperbole, Mayor Nutter often misstates facts and claims that lawful gun owners are violating the civil rights of other citizens.

28. Mayor Nutter wrongfully and maliciously claims that the formal reciprocity agreements with other states under Section 6109(k) of the Uniform Firearms Act is a "loophole" that allows firearms to be unlawfully possessed in the City of Philadelphia.

29. Mayor Nutter also negligently make statements, such as people like Mr. Lavalliere are criminals who acquired a firearm permit through the so-called "Florida loophole".

30. In April 2011, at the behest of Mayor Nutter and City Councilman Darrel Clark the City Council of Philadelphia passed another unconstitutional gun control law.  On the passage of the City of Philadelphia's legislation, an uninformed Councilman Clarke stated: "While Pennsylvania has reciprocity agreements recognizing gun licenses from other states, they are meant to allow state residents to carry guns when visiting other states, not to override the requirement for a Pennsylvania license."

31. Defendant City of Philadelphia Police Department, under the leadership of Defendant Ramsey, has well-known and documented custom, policy and practice of unlawfully seizing firearms of individuals such as Mr. Lavalliere that are licensed under Pennsylvania Act 235 and/or Florida permits.

32. Defendant City of Philadelphia Police Department, under the leadership of Defendant Ramsey, has well-known and documented custom, policy and practice of unlawfully seizing firearms of individuals such as Mr. Lavalliere that are licensed under reciprocal arrangements with other states such as Florida.

33. Each year, hundreds of law-abiding citizens are the victims of unlawful searches and seizures by Defendant City of Philadelphia employees (police officers) that result in their law-

fully possessed firearms being unlawfully seized and being permanently deprived of their lawfully possessed firearms.

34. During the time that Defendant Ramsey has been City of Philadelphia Police Commissioner, he unsuccessfully campaigned to restrict Mr. Lavalliere's and persons similarly situated right to legally bear arms by seeking to end reciprocity agreements between states.

35. Defendant Ramsey's efforts include providing distorted and one-sided testimony before local, state and federal agencies and legislative bodies in his effort to end reciprocity agreements between states.  In his September 13, 2011, testimony before the House Judiciary Committee, Subcommittee on Crime, Terrorism and Homeland Security, Defendant Ramsey cited a lone example of an out-of-state licensee involved in a fatal shooting in Philadelphia.  He failed to mention that in that same time period at least 13 African-American men were murdered by City of Philadelphia police officers using guns they were licensed to carry by the Commonwealth of Pennsylvania.

36. One piece of legislation that Defendant Ramsey opposed, H.R. 822 National Right-to Carry Reciprocity Act of 2011, was passed by the United States House of Representatives on November 16, 2011.  In commenting upon the bill's passage, GOP Rep. Lamar Smith of Texas, chairman of the House Judiciary Committee stated: "The Second Amendment is a fundamental right to bear arms that should not be constrained by state boundary lines."  The bill's chief co-sponsor, Rep. Cliff Stearns, R-Fla., said states should consider concealed carry permits no differently from driver's licenses recognized by all states.  He added that the legislation would "make it easier for law-abiding permit holders to know that they are simply in compliance with the law when they carry a firearm as they travel."

9

37. Defendant Ramsey also started an unsuccessful national petition using the White House's "We The People" website in his effort to end firearm reciprocity agreements between states.

38. In many media interviews, Defendant Ramsey has made clear his efforts to thwart citizens' right to lawfully bear arms.  In a Philadelphia Inquirer interview, Defendant Ramsey made it seem like firearm reciprocity agreements were the root of all evil and crime in Philadelphia by making the following hot air comment: "such broad reciprocity 'undermines the traditional authority of state and local governments to protect their citizens'."

39. Defendant Ramsey does not answer to anyone for his statements or actions because the only person that has any supervisory authority over Defendant Ramsey, Mayor Nutter, is nothing more than a "yes man" to Defendant Ramsey.  In fact, many times Mayor Nutter has parroted the very unlawful actions that are the subject of this lawsuit.  If not halted by federal lawsuits, Defendant Ramsey and his "yes man" Mayor Nutter will turn the Philadelphia into a "police state."

## The First Incident

40. On March 25, 2009, at approximately 9:00 p.m., Mr. Lavalliere was on his way to work and was unconstitutionally stopped, seized and searched by Defendants Velez and Cartagena pursuant to an unlawful custom, policy and practice by Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, Velez and Cartagena of unlawfully stopping African-American men in the City of Philadelphia.

41. For years before and after the unlawful stop of Mr. Lavalliere, Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, Velez and Cartagena unlawfully stopped, seized and searched African-American men in the City of Philadelphia.

42. While Defendant City of Philadelphia agreed to end these unlawful practices in order to end a federal lawsuit, these rogue practices continue to this day with the full knowledge and acquiescence of Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, Deputy Commissioner Johnson and other City of Philadelphia policy-makers such as Mayor Nutter.

43. During the unconstitutional stop, seizure and search of Mr. Lavalliere by Defendants Velez and Cartagena, Mr. Lavalliere was beaten without provocation or justification in violation of his constitutional and civil rights by Defendants Velez and Cartagena.

44. The beating by Defendants Velez and Cartagena resulted in Mr. Lavalliere being admitted and treated at Temple University Hospital on March 25, 2009.

45. Mr. Lavalliere's vehicle was also searched without a warrant and the interior of the vehicle was ripped apart costing several hundred dollars to repair.

46. Thereafter, in an attempt to cover-up their unconstitutional actions, Defendants Velez and Cartagena filed false and malicious criminal charges against Mr. Lavalliere.  In fact, Defendants Velez and Cartagena lied numerous times on official documents in an attempt to cover-up their unlawful actions.

47. Defendants Velez and Cartagena unlawfully seized a handgun from Mr. Lavalliere that he was **<u>lawfully carrying</u>** and, to this day, Mr. Lavalliere's handgun has not been returned to him.

48. Based upon Defendants Velez and Cartagena lies, Mr. Lavalliere was wrongfully, maliciously and falsely arrested and jailed.

49. Mr. Lavalliere had to post bail, and as result lost money.

50. Mr. Lavalliere had to hire to lawyer to successfully defend himself.

11

51. Mr. Lavalliere spent several thousand dollars in attorney's fees.

52. On July 9, 2009, Mr. Lavalliere successfully defended himself.  However, Mr. Lavalliere spent 107 days unemployed as result of the malicious, false and reckless allegations by Defendants Velez and Cartagena.

53. Even though Mr. Lavalliere successfully defended himself, Defendants Velez and Cartagena maliciously and recklessly caused information to be entered into the Commonwealth's firearm licensing registry making it appear that Mr. Lavalliere's firearm license had been revoked, and when Mr. Lavalliere attempted to purchase a new firearm to replace the one unlawfully seized by Defendants Velez and Cartagena he could not.

54. On July 20, 2009, Mr. Lavalliere received a letter from the Director of the Firearms Division of Pennsylvania State Police attesting to the fact that Mr. Lavalliere was "not prohibited from the purchase/transfer of a firearm."

55. Prior to October 19, 2009, Mr. Lavalliere wrote Defendant Ramsey and demanded that Defendants City of Philadelphia and City of Philadelphia Police Department return his unlawfully seized firearm.

56. On October 19, 2009, Defendant King wrote Mr. Lavalliere a letter wherein she states that: "The Philadelphia Police Department is in receipt of your letter.  The Police Commissioner has forwarded your request for the return of a firearm(s) to the Detective Bureau for Processing.  Upon completion of our investigation, you will be notified of the result in writing."

57. As of this date, 856 days later, Mr. Lavalliere has not received a notice of any decision from Defendant King.

58. Mr. Lavalliere reasonably believes and avers that prior to sending that letter, Defendant King agreed to act in concert with Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, Velez and Cartagena to not investigate Mr. Lavalliere's complaint.

59. As result of her failure to investigate Mr. Lavalliere's complaint, Defendant King denied Mr. Lavalliere due process.

60. After Mr. Lavalliere successfully defended himself against the malicious and false charges made by Defendants Velez and Cartagena, he became the victim of an unrelenting campaign of retaliatory harassment by other City of Philadelphia Police Officers.

61. In essence, Defendant City of Philadelphia police officers who are familiar with Mr. Lavalliere's automobile and his work habits wait along the route that Mr. Lavalliere takes to work solely for the purpose to unlawfully stop, search and seize him and unlawfully take his property.

## **The Second Incident**

62. On November 13, 2010, at approximately 11:00 p.m., Mr. Lavalliere was on his way to work as a security agent and was unconstitutionally stopped, seized and searched by Defendant Johnson pursuant to an unlawful custom, policy and practice by Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Johnson of unlawfully stopping African-American men in the City of Philadelphia.

63. When Mr. Lavalliere was unlawfully stopped, he was wearing his work uniform with BIG YELLOW letters spelling "AGENT" on the back of his shirt.

64. Mr. Lavalliere was also wearing a security agent badge.

65. Mr. Lavalliere told the Defendant Johnson that he was going to at a night club at Kensington Avenue and Adams Road.

66. During the pre-textual traffic stop, Defendant Johnson claims that Mr. Lavalliere's license to carry a firearm was "revoked."

67. In fact, Mr. Lavalliere possessed both a valid gun license and a valid Act 235 Permit.

68. Nevertheless, Defendant Johnson under the show of authority and force as a City of Philadelphia police officer compelled Mr. Lavalliere to surrender his Glock 32 Austria .357 Firearm, Florida Gun License and Act 235 Permit.

69. After about 15 minutes, approximately 12 other police officers arrived at the scene.

70. Mr. Lavalliere was unlawfully seized and arrested, driven to the 15th District Precinct and placed in a cell.

71. Upon arriving at the 15th District Precinct, Defendant Johnson and other unknown police officers made Mr. Lavalliere walk through of gauntlet of police officers who hurled verbal insults and profanity at Mr. Lavalliere and made Mr. Lavalliere fear for his life.

72. After being transported to the police precinct, Mr. Lavalliere saw Defendant Johnson, without a search warrant, open Mr. Lavalliere's closed wallet search through the closed compartments and remove Mr. Lavalliere's Concealed Weapon Firearm License issue to him by the State of Florida.

73. At the time Defendant Johnson conducted the search of Mr. Lavalliere's wallet, there were no exigent circumstances allowing a warrantless search of Mr. Lavalliere wallet.

74. While in the holding cell, Defendant Guarna questioned Mr. Lavalliere about the **previous false** and malicious charges by Defendants Velez and Cartagena.

75. After more than 5 hours, Mr. Lavalliere was released.

14

76. Mr. Lavalliere reasonably believes and avers that Defendants Johnson and Guarna could have determined in a matter of minutes that Mr. Lavalliere had a license to carry a concealed weapon, and that Mr. Lavalliere was working as a security agent under an Act 235 Permit.

77. Neither Defendants Johnson, Guarna nor any other City of Philadelphia Police Officer returned Mr. Lavalliere's Concealed Weapon Or Firearm License, Act 235 Permit or his firearm on the night of November 13, 2010.

78. Despite numerous demands by Mr. Lavalliere, to this day, none of those items have been returned to Mr. Lavalliere any of the Defendants.

79. The next day, November 14, 2010, Mr. Lavalliere filed a detailed "citizen's Complaint" with Defendant City of Philadelphia Police Department.

80. It was lodged as "Report No. 31831."

81. Therein Mr. Lavalliere recounted the unlawful activities by Defendants Johnson, Guarna and the other officers.

82. He specifically stated that he was "held for more than 5 [hours] in a cell" and that his "Florida license and Glock 32 was stolen by the Philadelphia Police 3 15 District."

83. This Complaint was assigned to Defendant City of Philadelphia Police Officer with Badge Number 3962.

84. On Thursday, December 9, 2010, Mr. Lavalliere gave a detailed statement to two investigators from the Police Department's internal Affairs Unit. Those officers were Lt. Douglas Stanford and Sgt. Maria Cianfrani.

85. Mr. Lavalliere specifically identified Defendant Johnson as the police officer who went into his wallet without a warrant and stole his Concealed Weapon Or Firearm License and Act 235 Permit and who took his lawfully possessed Glock 32 Firearm and ammunition.

86. Further, Mr. Lavalliere specifically identified Defendant Guarna as the City of Philadelphia Police Detective that harassed him and retaliated against him for previously asserting his constitutional rights and successfully defending himself against the false and malicious charges made by Defendants Velez and Cartagena.

87. On April 18, 2011, Defendant Deputy Commissioner Johnson sent Mr. Lavalliere a letter informing Mr. Lavalliere that his complaint against Defendants Johnson and Guarna were dismissed.

88. Mr. Lavalliere reasonably believes and avers that Defendant Deputy Commissioner Johnson did not engage in a reasonable investigation of his Complaint.

89. Mr. Lavalliere reasonably believes and avers that prior to sending that letter, Defendant Deputy Commissioner Johnson agreed to act in concert with Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, Johnson and Guarna not to properly investigate Mr. Lavalliere's complaint.

90. That conspiracy continues to this day.

91. As result of his failure to properly investigate Mr. Lavalliere's complaint, Defendant Deputy Commissioner Johnson denied Mr. Lavalliere due process.

## **The Third Incident**

92. On May 21, 2011 while on duty as a security agent, Defendants Monahan and Rivera falsely and maliciously arrested Mr. Lavalliere and wrongfully and maliciously accused him of crimes.

93. By this time due to numerous acts of harassment by City of Philadelphia Police Officers, Mr. Lavalliere was confused and was scared because Defendants Monahan and Rivera had guns drawn and approaching Mr. Lavalliere.

94. Mr. Lavalliere told Defendants Monahan and Rivera that he was on duty and his supervisor was on his way and to wait to talk to him about any issues.

95. However, they decided to pull their guns and out and point them at Mr. Lavalliere threatening his life.

96. They did this, knowing that Mr. Lavallier had a valid Act 235 license and a valid Florida Gun permit.

97. They did this after Mr. Lavellier offered to show them the aforementioned permits; however, the officers were not interested in hearing the truth.

98. By this time his supervisor made it to Mr. Lavalliere's location. He was in cuffs and then put in back of a police car for reasons unknown.

99. Mr. Lavalliere was completely cooperative from the beginning with all officers.

100. He was taken to precinct and then later changed with 3 felonies which are listed above. He was incarcerated in the Philadelphia Prison System for **several days**.

101. At that time, Defendants Monahan and Rivera wrongfully and maliciously took Mr. Lavalliere's firearm, ammunition, concealed weapons license and Act 235 Permit.

17

102. After months being wrongly accused of crimes, Mr. Lavalliere had his day in state court and was found not guilty of the charges brought by Defendants Monahan and Rivera.

103. As a result of the May 21, 2011's malicious arrest and prosecution, Mr. Lavalliere lost his job and he still unable to find a job until this day.

104. Even though Mr. Lavalliere was completely exonerated by a state court judge, Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, King, Monahan and Rivera have refused to return Mr. Lavalliere's firearm, ammunition, concealed weapons license and Act 235 Permit.

105. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson have a custom, policy and practice of not properly investigating complaints by Mr. Lavalliere and persons similarly situated which is the driving force behind that constitutional deprivations that Mr. Lavalliere has suffered and will suffer in the future because Mr. Lavalliere continues to work as a security agent and travel within the geographical boundary of the 15th Police Precinct.

106. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson have a custom, policy and practice of not properly investigating complaints by Mr. Lavalliere and persons similarly situated which is the driving force behind that constitutional deprivations that Mr. Lavalliere has suffered and will suffer in the future because Mr. Lavalliere and persons similarly situated have an out-of-state Concealed Weapon Or Firearm Licenses and Act 235 Permits.

107. Defendants' actions unlawfully interfere with Mr. Lavalliere's rights to bear arms.

108. Defendants' actions unlawfully interfere with Mr. Lavalliere's rights to contract for lawful employment.

109. Defendants' actions unlawfully interfere with Mr. Lavalliere's rights to lawful travel.

110. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department and Ramsey permit City Police Officers, such as Defendants Velez, Cartagena and Johnson, to work as armed security agents while off-duty, thus, Defendants Velez, Cartagena and Johnson personally benefit from denying Mr. Lavalliere's constitutional rights to bear the firearm license, firearms ammunition, Act 235 Permit he uses for lawful employment purposes because without his firearm license, firearms ammunition, Act 235 Permit and lack of a criminal record, Mr. Lavalliere cannot work as an armed security agent.

111. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia and Police Department are well aware the widespread nature of the constitutional violations described herein because numerous newspaper articles have been written wherein senior police officials, such as Defendant Ramsey were quoted by the reporters.

112. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia and Police Department are well aware the widespread nature of the constitutional violations described herein because numerous lawsuits have been filed seeking redress violations of innocent citizens' constitutional rights to bear arms.

113. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of the Second Amendment of the United States Constitution.

114. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of the Fourth Amendment of the United States Constitution.

115. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of the Takings Clause of the Fifth Amendment of the United States Constitution.

116. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of the Commerce Clause of the Fourteenth Amendment of the United States Constitution.

117. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

118. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of Article I, Section 21 of the Constitution of Pennsylvania.

119. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of Section 6109(k) of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6109(k).

120. Mr. Lavalliere reasonably believes and avers that Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and Deputy Commissioner Johnson and other decision and policy makers within the City of Philadelphia have not trained City Police Officers in the requirements of Section 6120(a) of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6120(a).

121. Mr. Lavalliere reasonably believes and avers that the well-known opposition to his exercise of Second Amendment rights by Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey and City of Philadelphia policy-makers such as Mayor Nutter has become a custom, policy and practice within the City of Philadelphia and the City of Philadelphia Police Department and is the driving force behind the violation of Mr. Lavalliere's constitutional rights.

## V. CAUSES OF ACTIONS

### COUNT I
### VIOLATION OF 42 U.S.C. § 1983
### DEFENDANT CITY OF PHILADELPHIA

122. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 118, as though they are fully set forth herein.

123. Defendant City of Philadelphia developed and maintained a number of deficient customs, policies and/or practices which proximately caused the deprivation of Mr. Lavalliere's constitutional rights as stated hereinabove.

124. Defendant City of Philadelphia's unlawful customs, policies and practices encouraged its employees to believe that they could violate the constitutional rights of Mr. Lavalliere with impunity and with the explicit or tacit approval of City of Philadelphia and its policy makers.

125. The acts constitute a violation of the First, Fourth, Fifth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

126. As a result of Defendant's knowingly, willfully, maliciously, wantonly, grossly intentional, recklessly and deliberately indifferent concerted conduct under the color of state law pursuant to an unconstitutional, customs, policies and practices, Mr. Lavalliere suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of their constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal stat-

utes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT II**
**VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**
**DEFENDANT CITY OF PHILADELPHIA POLICE DEPARTMENT**

127. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 123, as though they are fully set forth herein.

128. Defendant City of Philadelphia Police Department developed and maintained a number of deficient customs, policies and/or practices which proximately caused the deprivation of Mr. Lavalliere's constitutional rights as stated hereinabove.

129. Defendant City of Philadelphia Police Department's unlawful customs, policies and practices encouraged its employees to believe that they could violate the constitutional rights of Mr. Lavalliere with impunity and with the explicit or tacit approval of City of Philadelphia Police Department and its policy makers.

130. The acts constitute a violation of Title VI of the Civil Rights Act of 1964.

131. As a result of Defendants' knowingly, willfully, maliciously, wantonly, grossly intentional, recklessly and deliberately indifferent concerted conduct under the color of state law pursuant to an unconstitutional, customs, policies and practices, Mr. Lavalliere suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of their constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the

United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT III
### VIOLATION OF FOURTH AMENDMENT'S GUARANTEE OF FREEDOM FROM UNREASONABLE SEARCH

132. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 128, as though they are fully set forth herein.

133. The warrantless searches and seizures by Defendants violated Mr. Lavalliere's right to be secure in his possessions and to be free from unreasonable search as guaranteed by the Fourth Amendment to the United States Constitution and the laws of the United States.

134. As a direct and proximate result of Defendants' actions, Mr. Lavalliere's rights under the Fourth Amendment of the United States Constitution were violated.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT IV
### VIOLATION OF FOURTH AMENDMENT'S GUARANTEE TO BE FREE FROM UNREASONABLE SEIZURE

135. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 131, as though they are fully set forth herein.

136. The warrantless searches and seizures by Defendants violated Mr. Lavalliere's right to be secure in his possessions and to be free from unreasonable seizure as guaranteed by the Fourth Amendment to the United States Constitution and the laws of the United States.

137. As a direct and proximate result of Defendant Johnson's actions, Mr. Lavalliere's rights under the Fourth Amendment of the United States Constitution were violated.

138. As a direct and proximate cause of Defendant Johnson's actions, Mr. Lavalliere suffered humiliation and embarrassment, emotional distress, fear of police officers, defamation of his character, and violation of his civil rights and liberties.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

### COUNT V
### VIOLATION OF THE DUE PROCESS OF CLAUSE
### OF THE FOURTEENTH AMENDMENT

139. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 135, as though they are fully set forth herein.

140. At all times relevant hereto, Defendant City of Philadelphia led Mr. Lavalliere to believe that he could file a Citizen's Compliant against Defendants Velez, Cartagena, Johnson, Guarna and other City of Philadelphia Police Officers and his Citizen's Complaint would be properly investigated and processed.

141. However, Mr. Lavalliere's November 14, 2010 Citizen's Complaint against Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers was not properly investigated and processed.

142. Defendants City of Philadelphia, City of Philadelphia Police Department, Ramsey, Deputy Commissioner Johnson, King and others violated Mr. Lavalliere's rights of substantive and

25

procedural due process by willfully and maliciously failing to properly investigate Mr. La-valliere's IAD Complaints.

143. As a direct and proximate result of Defendant City of Philadelphia's failure to properly in-vestigate and process Mr. Lavalliere's Citizen's Complaint against Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers, Mr. Lavalliere has suffered a loss of substantive and procedural due process rights.

144. Defendants' deprivation of Mr. Lavalliere's constitutionally guaranteed rights, as previous-ly described herein, was intentional, recklessly indifferent, willful, wanton, malicious, and outrageous thereby inflicting severe emotional distress, defamation of character on Mr. La-valliere.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal stat-utes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT VI**
**FAILURE TO SUPERVISE**
**DEFENDANT RAMSEY**

145. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 141, as though they are fully set forth herein.

146. Defendant Ramsey and is the final policy and decision maker within Defendant City of Philadelphia Police Department.

147. Defendant Ramsey has knowingly, wrongfully, willfully, maliciously, wantonly, intention-ally and indifferently failed to supervise his employees or take any meaningful corrective

action even though he could have by simply complying with the constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful action against citizens the City of Philadelphia and other official misconduct by police officers.

148. As a result of Defendant Ramsey's knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continue a violation of his constitutional rights and to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT VII**
**FAILURE TO SUPERVISE**
**DEFENDANT DEPUTY COMMISSIONER JOHNSON**

149. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 145, as though they are fully set forth herein.

150. Defendant Deputy Commissioner Johnson and is the policy and decision maker within Defendant City of Philadelphia Police Department.

151. Defendant Deputy Commissioner Johnson has knowingly, wrongfully, willfully, maliciously, wantonly, intentionally and indifferently failed to supervise his employees or take any meaningful corrective action even though he could have by simply complying with the

constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful action against citizens the City of Philadelphia and other official misconduct by police officers.

152. As a result of Defendant Deputy Commissioner Johnson's knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continue a violation of his constitutional rights and to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT VIII
## FAILURE TO INTERVENE TO STOP A VIOLATION OF CIVIL RIGHTS
## DEFENDANTS RAMSEY AND DEPUTY COMMISSIONER JOHNSON

153. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 149, as though they are fully set forth herein.

154. At all times from March 25, 2009 until to the present, Defendants Ramsey and Deputy Commissioner Johnson, knew or could have known through reasonable investigatory methods that the acts and omissions of Defendants Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers were unconstitutional and violated the well-established rights of Mr. Lavalliere under the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

28

155. Yet Defendants Ramsey and Deputy Commissioner Johnson did not undertake any action to intervene to stop a violation of Mr. Lavalliere's civil rights, to the contrary, Defendants Ramsey and Deputy Commissioner Johnson did everything they could to ensure that Defendants Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers would continue to violate the well-established rights of Mr. Lavalliere under the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by failing to properly investigate and discipline Defendants Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers.

156. As a result of Defendants Ramsey and Deputy Commissioner Johnson's knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT IX**
**FAILURE TO INTERVENE TO STOP A VIOLATION OF CIVIL RIGHTS**
**DEFENDANT CITY OF PHILADELPHIA**

157. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 153, as though they are fully set forth herein.

158. At all times from March 25, 2009 until to the present, Defendant City of Philadelphia,

knew or could have known through reasonable investigatory methods that the acts and omissions of Defendants City of Philadelphia Police Department, Ramsey, Deputy Commissioner Johnson, Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers were unconstitutional and violated the well-established rights of Mr. Lavalliere under the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

159. Yet Defendant City of Philadelphia did not undertake any action to intervene to stop known violations of Mr. Lavalliere's civil rights, to the contrary, Defendant City of Philadelphia did everything it could to ensure that Defendants City of Philadelphia Police Department, Ramsey, Deputy Commissioner Johnson, Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers would continue to violate the well-established rights of Mr. Lavalliere under the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by failing to properly investigate and discipline Defendants City of Philadelphia Police Department, Ramsey, Deputy Commissioner Johnson, Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers.

160. As a result of Defendant City of Philadelphia's knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal stat-

utes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT X**
**DENIAL OF DUE PROCESS**
**DEFENDANT RAMSEY**

161. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 157, as though they are fully set forth herein.

162. At all times relevant hereto, Defendant Ramsey led Mr. Lavalliere to believe that he could file a Citizen's Compliant against Defendants Velez, Cartagena, Johnson, Guarna and other City of Philadelphia Police Officers and his Citizen's Complaint would be properly investigated and processed.

163. However, Mr. Lavalliere's November 14, 2010 Citizen's Complaint against Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers was not properly investigated and processed.

164. As a direct and proximate result of Defendant Ramsey's failure to properly investigate and process Mr. Lavalliere's Citizen's Complaint against Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers, Mr. Lavalliere has suffered a loss of substantive and procedural due process rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XI
## DENIAL OF DUE PROCESS
## DEFENDANT DEPUTY COMMISSIONER JOHNSON

165. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 161, as though they are fully set forth herein.

166. At all times relevant hereto, Defendant Deputy Commissioner Johnson led Mr. Lavalliere to believe that he could file a Citizen's Compliant against Defendants Velez, Cartagena, Johnson, Guarna and other City of Philadelphia Police Officers and his Citizen's Complaint would be properly investigated and processed.

167. However, Mr. Lavalliere's November 14, 2010 Citizen's Complaint against Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers was not properly investigated and processed.

168. As a direct and proximate result of Defendant Ramsey's failure to properly investigate and process Mr. Lavalliere's Citizen's Complaint against Velez, Cartagena, King, Johnson, Guarna and other City of Philadelphia Police Officers, Mr. Lavalliere has suffered a loss of substantive and procedural due process rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XII
## DENIAL OF DUE PROCESS
## DEFENDANT KING

169. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 165, as though they

are fully set forth herein.

170. At all times relevant hereto, Defendant King led Mr. Lavalliere to believe that he could file a Citizen's Compliant regarding the unlawful tasking of firearm by Defendants Velez, Cartagena and other City of Philadelphia Police Officers and his Citizen's Complaint would be properly investigated and processed.

171. However, Defendant King did not properly investigate and/or process Mr. Lavalliere's Complaint regarding the unlawful tasking of firearm by Defendants Velez, Cartagena and other City of Philadelphia Police Officers.

172. As a direct and proximate result of Defendant King's failure to properly investigate and process Mr. Lavalliere's Citizen's Complaint against regarding the unlawful tasking of firearm by Defendants Velez, Cartagena and other City of Philadelphia Police Officers, Mr. Lavalliere has suffered a loss of substantive and procedural due process rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XIII
## RETALIATION
## DEFENDANTS JOHNSON AND GUARNA

173. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 169, as though they are fully set forth herein.

174. On November 13, 2010 Defendants Johnson and Guarna retaliated against Mr. Lavalliere by wrongfully and maliciously arresting Mr. Lavalliere and taking his property because he

had successfully defended himself against the false and malicious charges made by Defendants Velez and Cartagena on March 25, 2009.

175. At the time Defendants Johnson and Guarna retaliated against Mr. Lavalliere by wrongfully and maliciously arresting Mr. Lavalliere they knew that the United States Constitution barred their actions against Mr. Lavalliere, or that Mr. Lavalliere's right to free from retaliatory police misconduct was firmly established on that date.

176. As a result of Defendants' knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XIV
## TAKING PROPERTY RIGHTS

177. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 173, as though they are fully set forth herein.

178. All individually named Defendants knew or should have known that the firearms, concealed weapons licenses and Act 235 Permits that unlawfully seized were the lawfully possessed property of Mr. Lavalliere.

179. Yet, all individually named Defendants agreed to act knowingly, intentionally, willfully,

maliciously, wantonly, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to wrongfully interfered with Mr. Lavalliere's property rights.

180. Defendants knowingly, intentionally, willfully, maliciously, wantonly, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to wrongfully denied Mr. Lavalliere his property rights.

181. As a result of Defendants' knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XV
## INVASION OF PRIVACY – FALSE LIGHT

182. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 178, as though they are fully set forth herein.

183. Defendants knowingly, willfully, maliciously, wantonly, intentionally, recklessly and with deliberate indifference invaded the privacy and/or cast Mr. Lavalliere in a false light by charging him with crimes and making it appear to others that Mr. Lavalliere had violated the laws of the Commonwealth of Pennsylvania and/or otherwise engaged in conduct that was inconsistent with the character and reputation of Mr. Lavalliere.

184. As a result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, inten-

tionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT XVI**
**ASSAULT AND BATTERY**
**DEFENDANTS VELEZ AND CARTAGENA**

185. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 181, as though they are fully set forth herein.

186. On March 25, 2009, Defendants Velez and Cartagena assaulted and beat Mr. Lavalliere without provocation or legal justification.

187. At all times during Defendants Velez and Cartagena's assault and beating of Mr. Lavalliere, Mr. Lavalliere was in their custody by a show of their authority as Defendant City of Philadelphia police officers.

188. As a direct and proximate result of Defendants Velez and Cartagena's assault and beating of Mr. Lavalliere, Mr. Lavalliere was admitted and treated at Temple University Hospital for head injuries that caused Mr. Lavalliere severe pain and suffering.

189. Defendants Velez and Cartagena's assault and beating of Mr. Lavalliere was done knowingly, willfully, maliciously, wantonly, intentionally, recklessly and with deliberate indif-

ference in concert and conspiracy with each other to violate Mr. Lavalliere' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and other federal laws.

190. As a result of Defendants' knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct of assaulting and beating of Mr. Lavalliere, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XVII
### FALSE ARREST AND FALSE IMPRISONMENT

191. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 187, as though they are fully set forth herein.

192. On March 25, 2009, November 13, 2010 and May 21, 2011, Mr. Lavalliere was falsely accused of crimes and wrongfully and maliciously arrested by Defendants Velez, Cartagena, Johnson, Guarna, Monahan and Rivera.

193. All the crimes that Mr. Lavalliere was charged with as a result of these false and malicious arrests were either dismissed or Mr. Lavalliere was found not guilty.  Thus, all proceedings were successfully terminated in Mr. Lavalliere's favor.

194. All Defendants' conduct constitutes false arrest and false imprisonment that was done

knowingly, willfully, maliciously, wantonly, intentionally, recklessly and with deliberate indifference in concert and conspiracy with each other and others to violate Mr. Lavalliere' constitutional rights under the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983, 1985(3), 1986 and 1988 and other federal laws.

195. All Defendants knowingly, intentionally, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferently caused Mr. Lavalliere to be wrongfully imprisoned when they knew or could have known that he was innocent.

196. As a result of Defendants' knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XVIII
## MALICIOUS PROSECUTION AND ABUSE OF PROCESS

197. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 193, as though they are fully set forth herein.

198. On March 25, 2009, November 13, 2010 and May 21, 2011, Mr. Lavalliere was falsely accused of crimes and wrongfully and maliciously arrested by Defendants Velez, Cartagena, Johnson, Guarna, Monahan and Rivera.

199. All the crimes that Mr. Lavalliere was charged with as a result of these false and malicious arrests were either dismissed or Mr. Lavalliere was found not guilty.  Thus, all proceedings were successfully terminated in Mr. Lavalliere's favor.

200. As a result of Defendants' knowingly, willfully, maliciously, wantonly, intentionally, recklessly and deliberately indifferent concerted conduct, Mr. Lavalliere has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

## COUNT XIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ALL DEFENDANTS

201. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 197, as though they are fully set forth herein.

202. All Defendants' conduct was done knowingly, intentionally, willfully, maliciously, wantonly, grossly intentional, recklessly and with deliberate indifference to cause Mr.  Moss extreme emotional distress.

203. Defendants' actions caused Mr. Lavalliere to suffer unnecessary physical pain and suffering and emotional pain and suffering.

204. Defendants' conduct, in concert with each other, was done knowingly, intentionally, will-

fully, maliciously, wantonly, grossly intentionally, and recklessly and was beyond the bounds of conduct tolerated in a civilized society.

205. As a result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, grossly intentional, recklessly and deliberately indifferent concerted conduct, Mr. Moss has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, economic loss and loss of his constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT XX**
**CONSPIRACY UNDER THE COLOR OF STATE LAW**
**TO VIOLATE MR. LAVALLIERE'S' CONSTITUTIONAL, CIVIL RIGHTS AND**
**OTHER RIGHTS ALL DEFENDANTS**

206. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 202, as though they are fully set forth herein.

207. All Defendants expressly or tacitly agreed to act and did expressly or tacitly act under the color of state law pursuant to the numerous unconstitutional, customs, policies and practices averred herein, knowingly, intentionally, willfully, maliciously, wantonly, grossly intentional, recklessly and with deliberate indifference, in concert and conspiracy with each other and others in the furtherance of numerous unconstitutional customs, policies and practices to undertake the violations of Mr. Lavalliere' constitutional, civil and other federal rights described herein.

208. As a result of all Defendants' knowingly, intentionally, willfully, maliciously, wantonly,

grossly intentional, recklessly and deliberately indifferent concerted conduct under the color of state law pursuant to an unconstitutional, custom policy and practice, Mr. Lavalliere suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of their constitutional and other state and federal rights.

WHEREFORE, Mr. Lavalliere seeks relief under Title VI of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981, 1982, 1983, 1986 and 1988; the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, other constitutional provisions, federal statutes and state laws in an amount not less than $150,000.00, attorney's fees, costs, expenses and interest.

**COUNT XXI**
**DAMAGES**

209. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 205, as though they are fully set forth herein.

210. On all Claims For Relief, Mr. Lavalliere demands damages in the amount as stated on all claims for relief and all costs of this action with interest.

211. Under the Civil Rights Act of 1871, 42 U.S.C. § 1988, 28 U.S.C. § 1961 and 28 U.S.C. § 1920, Mr. Lavalliere demands reasonable attorney's fees, costs and expenses, and interest.

212. Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1988, 28 U.S.C. § 1961 and 28 U.S.C. § 1920, Mr. Lavalliere demands reasonable attorney's fees, costs and expenses, and interest.

213. On all Claims For Relief, Mr. Lavalliere demands punitive damages in the amount of $150,000.00 on all claims for relief and all costs of this action with interest because De-

fendants' actions exceeded the normal standards of decent conduct and were malicious, willful, oppressive, outrageous and unjustifiable.

214. Mr. Lavalliere demands other just relief as the Court may award.

WHEREFORE, Mr. Lavalliere demands judgment and damages on all facts and claims for relief herein asserted, and upon judgment, reasonable attorney's fees, all costs, expenses and interest

## COUNT XXII
## DEMAND FOR JURY TRIAL

215. Mr. Lavalliere hereby incorporates by reference, Paragraphs 1 through 211, as though they are fully set forth herein.

216. On all facts and claims for relief asserted, Mr. Lavalliere demands a trial by jury.

WHEREFORE, Mr. Lavalliere demands judgment and damages on all facts and claims for relief herein asserted, and upon judgment, reasonable attorney's fees, all costs, expenses and interest.

Respectfully submitted,

_____
James E. Lee, Esquire
BROOKER, RICHARDSON, DICKERSON, LEE
AND ASSOCIATES
Attorneys at Law
1500 Market Street, 12th Floor East Tower
Philadelphia, PA 19102
Attorney For Jeff Lavalliere
March 5, 2012

43