# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFF LAVALLIERE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, et al., | : | No. 12-1357 |
| Defendants. | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                    **June 29, 2012**

Jeff Lavalliere asserts a wide-ranging conspiracy against him to deprive him of his Second Amendment right to carry a firearm. His Complaint focuses on three incidents between March 2009 and May 2011, in which numerous Philadelphia police officers illegally stopped, searched, assaulted, and filed false charges against him. The City of Philadelphia (the "City") also has a policy, according to Lavalliere, to deprive him, and others like him, from possessing firearms, though he has a valid Florida firearms license. He brings a plethora of federal and state law claims against numerous Defendants. Defendants have filed a partial motion to dismiss, which the Court grants for the reasons that follow.

## I.      FACTUAL BACKGROUND

Lavalliere lives in Philadelphia and, as a result of his work as security guard, carries a firearm. (Compl. ¶¶ 6, 24.) On March 26, 2009, Lavalliere was certified as an agent pursuant to the Lethal Weapons Training Act, also known as Act 235. (*Id.* ¶ 23.) On November 29, 2010, Lavalliere was re-issued a license to carry a concealed weapon by the State of Florida. (*Id.* ¶ 21.) According to Plaintiff, in 2001, Pennsylvania began recognizing Florida firearm licenses. (*Id.* ¶ 20.) He also claims

that the City "has a long and unsuccessful history of attempting to regulate lawful gun ownership" contrary to Pennsylvania law, which prevents municipalities from regulating the lawful ownership and possession of firearms when carried for purposes not prohibited by Pennsylvania law. (*Id.* ¶ 25.)

Lavalliere claims that Defendants Philadelphia Police Department and Philadelphia Police Commissioner Charles Ramsey maintain a documented custom, policy, and practice of unlawfully seizing firearms from licensed individuals such as Plaintiff. (*Id.* ¶¶ 31-34.) Lavalliere points to three incidents that demonstrate Defendants desire to trample the Second Amendment rights of individuals in Philadelphia who possess firearms legally licensed in other states. The first incident, which occurred on March 25, 2009, involved Lavalliere being unconstitutionally stopped, seized, and searched by Defendant Police Officers Velez and Cartagena while Plaintiff was on his way to work. (*Id.* ¶ 40.) On that date, Officers Velez and Cartagena beat Lavalliere, searched his car without a warrant, and ripped apart the interior of his car. (*Id.* ¶¶ 43-45.) They also unlawfully seized a handgun from Lavalliere that he was lawfully carrying. (*Id.* ¶ 47.) To cover up their actions, Officers Velez and Cartagena filed false and malicious criminal charges against Plaintiff, costing him thousands of dollars in legal fees and his freedom. (*Id.* ¶¶ 48-51.) Though Lavalliere ultimately defended himself against the charges filed against him, Officers Velez and Cartagena "maliciously and recklessly caused information to be entered into the Commonwealth's firearm licensing registry making it appear that Mr. Lavalliere's firearm license had been revoked," thus preventing Plaintiff from buying a new gun. (*Id.* ¶¶ 52-53.) Though Plaintiff has demanded his gun back, he still is awaiting the results of an investigation as to whether it should be returned to him. (*Id.* ¶¶ 57-58.)

The second incident occurred on November 13, 2010, again as Lavalliere was on his way to work. (*Id.* ¶ 62.) The stop of Lavalliere was pretextual and part of a policy to unlawfully stop

African-American men in Philadelphia. (*Id.* ¶¶ 62, 66.) During the stop, Defendant Police Officer Johnson[1] told Plaintiff that his license to carry a firearm had been revoked, though Plaintiff possessed both a valid gun license and a valid Act 235 permit. (*Id.* ¶¶ 66-67.) Lavalliere was forced to surrender his firearm, his Florida gun license, and his Act 235 permit. (*Id.* ¶ 68.) He was arrested and driven to the 15th District Precinct, where he was forced to "walk through a gauntlet of police officers who hurled verbal insults and profanity at Mr. Lavalliere and made Mr. Lavalliere fear for his life." (*Id.* ¶¶ 67-71.) Officer Johnson also illegally searched Plaintiff's wallet and removed his concealed weapon firearm license issued by the Florida. (*Id.* ¶¶ 72-73.) Lavalliere was released after more than five hours. (*Id.* ¶ 75.) Plaintiff has demanded the return of his items and filed a detailed complaint with the Philadelphia Police Department. (*Id.* ¶¶ 78-83.) To date, his property has not been returned, and his complaint was denied. (*Id.* ¶¶ 78, 87.) Defendant Detective Vincent Guarna also engaged in unlawful activities during this second incident. (*Id.* ¶¶ 74, 76, 77, 81.)

The third incident occurred on May 21, 2011, while Lavalliere was working as a security agent. (*Id.* ¶ 92.) On that day, Defendant Officers Monahan and Rivera falsely and maliciously arrested Plaintiff and wrongfully and maliciously accused him of crimes. (*Id.* ¶ 92.) Although Officers Monahan and Rivera knew that Lavalliere had a valid Act 235 permit and a valid Florida gun permit, they approached Plaintiff with their guns drawn and threatened his life. (*Id.* ¶¶ 96-97.) Lavalliere was placed in handcuffs and put into the back of a police car. (*Id.* ¶ 98.) Plaintiff was charged with three felonies and incarcerated for several days. (*Id.* ¶ 100.) Officers Monahan and Rivera also "wrongfully and maliciously took Mr. Lavalliere's firearm, ammunition, concealed

---

[1] To date, the first names of Police Officers Johnson, Velez, Cartagena, Monahan, and Rivera remains unknown to the Court, though the Complaint includes their respective badge numbers.

3

weapons license and Act 235 Permit." (*Id*. ¶ 101.) He was eventually found not guilty of the charges brought against him, but he lost his job and remains unemployed to this day. (*Id*. ¶¶ 102-03.) He also has not had his gun, ammunition, concealed weapons license, or permit returned to him. (*Id*. ¶ 104.)

The Complaint, filed on March 15, 2012, asserts a litany of causes of action, including violations of Lavalliere's civil rights, including his Fourth Amendment right to be free from unreasonable searches and seizures, and his due process rights. He also claims Defendants conspired to deprive him of his constitutional rights and accuses certain Defendants of failure to supervise and intervene, assault and battery, retaliation, invasion of privacy, false arrest and imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

If the allegations in the complaint establish that the claims were brought outside the statute of limitations, the claims are subject to dismissal for failure to state a claim. *White v. The Hon Co.*, Civ. A. No. 11-4919, 2012 WL 1286404, at *2 (E.D. Pa. Apr. 13, 2012); *Stratton v. Nieves*, Civ. A. No. 11-7410, 2012 WL 1156113, at *1 (E.D. Pa. Apr. 6, 2012) ("Generally, a statute of limitations defense must be raised in an answer, not under a Rule 12(b) motion. However, under the law of the Third Circuit, defendants may raise a limitations defense under Rule 12(b)(6) if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002))).

5

III.    DISCUSSION

Defendants filed a partial motion to dismiss seeking: dismissal of Plaintiff's claim brought pursuant to Title VI of the Civil Rights Act of 1964; dismissal of all claims against Officers Velez and Cartagena; and dismissal, in part, of Lavalliere's false light invasion of privacy claim.

Plaintiff's first argument is that "[w]hile not expressly asserted, it appears that Defendant, City of Philadelphia's Motion to Dismiss is also stitched together with a Federal Rule of Civil Procedure, Rule 12(b)(1) thread—barely." (Pl.'s Mem. of Law in Resp. & Opp'n to Defs.' Mot. to Dismiss [Pl.'s Mem.] at 10-11.) The Court has reviewed Defendants' motion, which is only five pages long, and does not interpret it as Plaintiff does. The Court searched in vain for any hint that Defendants are arguing that this Court lacks subject matter jurisdiction. The Complaint clearly brings civil rights claims and thus invokes the federal question jurisdiction of this Court.

A.    Title VI Claim

Defendants argue that this claim must be dismissed against the Philadelphia Police Department because that entity does not have an independent corporate existence. (Br. in Supp. of Defs.' Partial Mot. to Dismiss [Defs.' Br.] at 3.) They also argue that Plaintiff failed to state a Title VI claim. (*Id.*)

Title VI reads that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute authorizes an implied right of action for victims of discrimination. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703 (1979). However, there is no private right of action available to enforce disparate impact regulations promulgated under Title VI. *Alexander v. Sandoval*, 532 U.S.

6

275, 293 (2001).

Regardless of which entity would be the correct one to sue under Title VI, Plaintiff has failed to state a claim under the law. As illuminated in his brief, Plaintiff argues that Title VI was violated because he had successfully defended himself against false charges brought against him. (Pl.'s Mem. at 18.) This does not state a claim under Title VI, which applies to discrimination based upon race, color, or national origin. Although Plaintiff's Complaint references a policy that the City of Philadelphia maintained under which African Americans were selectively pulled over by police, his allegations do not clearly invoke this policy. As currently constituted, Lavalliere has failed to state a claim under Title VI. However, the Court will allow him to amend his Complaint to add a Title VI claim, provided he can do so in good faith.

**B.     Claims Against Officers Velez and Cartagena**

Officers Velez and Cartagena were involved in the first incident, which occurred on March 25, 2009. Specifically, on that date, Lavalliere claims that Officers Velez and Cartagena unconstitutionally stopped, searched, and seized him while he was on the way to work. (Compl. ¶ 40.) They also illegally took Plaintiff's handgun and filed false and malicious criminal charges against him. (*Id*. ¶¶ 46-47.) On July 9, 2009, Lavalliere successfully defended himself. (*Id*. ¶ 52.) Officers Velez and Cartagena "maliciously and recklessly caused information to be entered in the Commonwealth's firearm licensing registry making it appear that Mr. Lavalliere's firearm license had been revoked." (*Id*. ¶ 53.) On July 20, 2009, Lavalliere received a letter from the Director of the Firearms Division of the Pennsylvania State Police stating that Lavalliere was not prohibited from buying a gun. (*Id*. ¶ 54.) Prior to July 20, 2009, Plaintiff wrote to Commissioner Ramsey and demanded that his gun be returned to him. (*Id*. ¶ 55.) Though Defendant Lisa King responded that

7

his claim was being investigated and that he would be notified of the results, an answer to Lavalliere's demand has not been forthcoming. (*Id*. ¶¶ 55-57.)

Plaintiff's claims against Officer Velez and Cartagena are time-barred. Plaintiff's response to Defendants' motion to dismiss on this issue does not directly address Defendants' statute of limitations contention. Rather, it simply repeats certain allegations in the Complaint that Plaintiff finds relevant. (Pl.'s Mem. at 19-25.) But none of the actions undertaken by Officers Velez and Cartagena occurred within the relevant statute of limitations.

When calculating the statute of limitations for claims brought under 42 U.S.C. § 1983, federal courts look to the relevant state's personal injury law to determine the appropriate statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). As Plaintiff's claims brought under Section 1983 originated in Pennsylvania, the Court must look to Pennsylvania law to determine the appropriate statute of limitations. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000). Pennsylvania has a two-year statute of limitations for personal injury actions. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 5524(2)). This includes claims for assault and battery.  42 Pa. Cons. Stat. § 5524(1).

The accrual date of a Section 1983 cause of action is a question of federal law. *Wallace*, 549 U.S. at 388. Under federal law, the statute of limitations commences when the plaintiff knows or has reason to know of the injury that is the basis of the Section 1983 claim. *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *see also Little v. City of Phila.*, Civ. A. No. 07-5361, 2008 WL 2704579, at *2 (E.D. Pa. July 3, 2008) ("A cause of action filed under §§ 1981, 1983, 1985 or 1986 accrues when the plaintiff knows of should know that his or her constitutional rights have been violated.").

8

Lavalliere charges that he was unconstitutionally stopped, searched, and seized by Officers Velez and Cartagena on March 25, 2009. He also claims that he was assaulted and battered by Velez and Cartagena on that date. Additionally, Lavalliere was also falsely imprisoned as a result of the malicious prosecution instituted against him. Plaintiff successfully defended himself on July 9, 2009.

Claims of unreasonable searches and seizures generally accrue on the day that the search or seizure occurred because the plaintiff is aware of the injury on that day. *See Raffensberger v. Moyer*, Civ. A. No. 09-4758, 2010 WL 1257628, at *3 (E.D. Pa. Mar. 29, 2010). To the extent Plaintiff contends that he was subjected to an unlawful search and/or seizure or excessive force stemming from the incident that occurred on March 25, 2009, these claims fall outside the statute of limitations. *See Large v. Cnty. of Montgomery,* 307 F. App'x 606, 607 (3d Cir. 2009) (holding that two-year statute of limitations for excessive force claim accrued on the day of the alleged mistreatment). Clearly, Lavalliere knew that he had been unconstitutionally stopped, searched, and seized on March 25, 2009, the date of his arrest. He also knew at that time that he had been assaulted and battered. But Plaintiff did not file his Complaint until March 15, 2012. Thus, these claims against Officers Velez and Cartagena are stale and will be dismissed.

To the extent Lavalliere seeks to bring Section 1983 false arrest and false imprisonment claims, those are also barred. The Supreme Court has held that a Section 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, when the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process. *Wallace*, 549 U.S. at 397; *see also Montgomery*, 159 F.3d at 126 (concluding that a Section 1983 false arrest or false imprisonment claim accrues at the time of arrest and detention). Similarly, the statute of limitations on a false imprisonment claim begins to run when the false imprisonment

9

ends, that is, when the victim is "bound over by a magistrate or arraigned on charges or when he is released." *Wallace v. Green*, Civ. A. No. 08-3239, 2010 WL 1303446, at *4 (E.D. Pa. Mar. 31, 2010) (citing *Wallace*, 549 U.S. at 389).

Finally, Lavalliere's malicious prosecution claim against Officers Velez and Cartagena is also time-barred. "The statute of limitations on a malicious prosecution claim in Pennsylvania does not begin to run until the underlying action is terminated in the original defendant's favor." *Cora v. Hanover Borough Police Dep't*, Civ. A. No. 11-1067, 2011 WL 6176738, at *5 (M.D. Pa. Dec. 12, 2011). Plaintiff successfully defended himself on July 9, 2009. Thus, his charge of malicious prosecution, filed on March 15, 2012, is well outside the two-year statute of limitations.

All claims against Officers Velez and Cartagena are dismissed.

## C.    False Light Invasion of Privacy

Defendants seek only to bar Plaintiff's invasion of privacy claim for the first two incidents, which occurred on March 25, 2009, and November 13, 2010, respectively. (Defs.' Br. at 5.) Invasion of privacy claims brought under Pennsylvania law are subject to a one-year statute of limitations. 42 Pa. Cons. Stat. § 5523(1); *Travis v. Deshiel*, 832 F. Supp. 2d 449, 453 (E.D. Pa. 2011).

According to the Complaint, Plaintiff's false light claim is based on falsely charging him with crimes and making him appear as a lawbreaker to others. (Compl. ¶ 183.) To the extent this claim is based on damage to Plaintiff's reputation because he was painted as a criminal, his claims for any damages stemming from his arrest on March 25, 2009 and November 13, 2010 have expired. Lavalliere believes that his invasion of privacy claim is timely based on the continuing violation doctrine and the discovery rule. (Pl.'s Mem. at 25-31.) Lavalliere contends he was forced to continuously protest his innocence for more than 175 days and, to this day, his record contains false

10

entries of crimes he did not commit. (*Id*. at 27-28.)

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *McCreary v. Redev. Auth. of the City of Erie*, 427 F. App'x 211, 215-16 (3d Cir. 2011) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)).

The continuing violation doctrine does not apply here. Plaintiff's invasion of privacy claims arise out of three separate incidents involving different police officers. The fact that he claims different individuals violated his privacy on different dates does not render the conduct part of a continuing practice. If three different individuals wrote different defamatory statements regarding Plaintiff on three separate occasions, the fact that one took place within the statute of limitations would not breathe life into the other two. Lavalliere would simply have three claims of defamation, not one. And the fact that Lavalliere's record remains blemished does not save his stale claims because a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cowell*, 263 F.3d at 293. Plaintiff's invasion of privacy claim does not accrue when the ill effects of Defendants' conduct cease.

The discovery rule also fails to revive Plaintiff's stale claims. The discovery rule tolls the statute of limitations when a plaintiff is unable, despite exercising due diligence, to know of his injury or its cause. *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006). Thus, if a plaintiff suffers an injury, the statute of limitations does not begin to run until he knows, or reasonably should know, that he has been injured, and that his injury has been caused by another party's conduct. *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003). The party seeking to invoke the discovery rule must

11

show that he acted with reasonable diligence in attempting to unearth the fact and cause of his injury but was still unable to ascertain it. *Weik v. Estate of Brown*, 794 A.2d 907, 909 (Pa. Super. Ct. 2002).

Lavalliere suggests that "[p]art of the injury that Mr. Lavalliere complains of did not occur until he applied for employment and was denied employment because of his criminal record." (Pl.'s Mem. at 30.) If accepted, Plaintiff's argument would eviscerate the statute of limitations and lead to absurd results. If the statute of limitations of his invasion of privacy claim was tolled until Plaintiff no longer felt the brunt of its effects, it would be open-ended. He could sue twenty years after his privacy was invaded if he was, for example, denied employment based on his false criminal record many years from today. Plaintiff was clearly aware that Defendants portrayed him in a false light when they wrongly accused him of criminal behavior. He is not permitted to see how far the damage caused by Defendants conduct extends before suing. His invasion of privacy claims related to the March 25, 2009 and November 13, 2010 incidents are time barred.

IV.    **CONCLUSION**

The claims against Officers Velez and Cartagena are dismissed. The invasion of privacy claims stemming from the March 25, 2009 and November 13, 2010 incidents are also dismissed. The Title VI claim is also dismissed, but Plaintiff may file an amended complaint to add a viable Title VI claim. An Order consistent with this Memorandum will be docketed separately.